Freeman, J.,
delivered the opinion of the court.
This is a bill of review filed by the complainants, *383 the three children of Joseph Brown, and others, seeking to review and reverse a decree of the chancery court at Memphis construing the will of George P. Cooper, and awarding Georgia Pettit, one of the daughters of the testator, an equal share of his property under this suit.
The first, and the leading question, in the case, is whether the Chancellor’s decree, on the face of it, discloses an error of law for which, under the established rules, it should be reversed.
In the language of Judge McKinney, in the case of Eaton v. Dickinson, 3 Sneed, 400:—
“By error apparent on the face of the decree, is not not meant a decree merely erroneous and improper in itself because based on inadmissible or improper evidence, ■>r contrary to, or unsupported by, proof; but a decree that in point of law is erroneous upon the state of facts as assumed and set forth in the body of decree itself.”
In other words: — “The question is, not whether the cause is well decided, but whether the decree is right or wrong on the face of it.” 17 Vesey, 178.
We need but say- that, the case standing on demurrer, we can look only at the errors of law pointed out in the bill itself. We cannot look at any others even if they be found in the record. Under these well settled rules, we proceed to examine the question presented.
After appointing his wife and Sylvester Bailey to execute his will, and the former as the guardian of his children, the portion of the will follows out of which this case has arisen:—
*384 “Said executor and executrix are jointly to bold and use all my real and personal estate not otherwise herein specifically bequeathed, for the proper support, education, and inheritance, of my said children, by continually, and with all usual restrictions and provisions, renting out my houses in the city of Memphis, all net proceeds to go continually into a fund created thereby, and by such other money or its equivalent, and such real and personal estate as I now possess, or as may be hereafter acquired by myself, or by said executor and executrix in virtue of this will, the money to be safely loaned in prudent parcels on ample security for not more than one year at a time. And said fund, (being all my money and property, real and personal, not herein specifically bequeathed) is to be legally and equitably estimated whenever any of said children may marry or attain lawful age, so that such child shall then have an equal share of said estimated fund or property, to belong to and be the property of only said child, and at her death, to and of her lawful issue; and if such child die without such issue, then said equal share of said estimated fund or property to revert to and continue in said fund, for common division as before among the survivors.”
He then adds: — “Provided however, in every case, that no child shall ever marry any blood kin, or blood relation, or any Catholic, or adherent of the Roman Catholic Church, or of its Papal Head; nor before her eighteenth year shall be full; and should any of my said children marry in any way contrary to any part of this provision, then that child shall *385 take or receive, in lieu of wbat is or has been herein bequeathed to her, one thousand dollars in money, to be disbursed and used by my said executor and executrix in the careful purchase of such things as said child may need in and towards housekeeping, and to be given to said child on loan or in trust, and to constitute the whole of that child’s legacy. And it is to be most devoutly hoped that no child of mine will ever be fascinated by an infidel, or idler, or loafer, or debaueher, gamester or drunkard.”
The correctness of the Chancellor’s view of the legal effect of this clause, is the first question to be disposed of.
After reciting the above clauses, the decree proceeds thus:—
“And it further appearing to the court that the complainant Georgia was not at the time of her marriage eighteen years of age, but that her said marriage was in all other respects consistent with the said provision, and that said testator became fully reconciled to, and satisfied with, said marriage, and repeatedly expressed his satisfaction therewith, and his desire that said condition and forfeiture should be dispensed with; and the court being of the opinion that the said provision or condition in said will was intended by the said testator to apply to such marriages as took place after his death, and not to those solemnized in his lifetime; and being further of the opinion that said condition is ineffectual, upon the ground that the same was evidently intended and used by said testator hi terrorem, and not with a view to impose a forfeiture; *386 therefore the court doth order, adjudge, and decree, that the complainant Georgia did not by her said marriage before she attained eighteen years of age, forfeit her share and interest under said will in her father’s estate.”
On the questions presented, there has been much conflict of opinion in the English courts, and it would be useless to attempt'to reconcile the cases. Many of them seem to have been decided according to the views of the particular Chancellors, rather than upon any definite principle deduced from the analogies of the law. It seems to us that when it was settled that every man of sound mind might dispose of his estate by last will and testament, it would have been far safer, and certainly it would have relieved the courts of much perplexity, to have held that, whatever that disposition might be, when fairly ascertained, it should be carried out; this rule, as a matter of course, being subject to the qualification, that such intention must not be repugnant to law, nor to the policy of the State. On this restriction is based the general rule of both the common • and the civil law, that all conditions annexed to gifts generally prohibiting marriage are void, because contrary to the common weal and good order of society.
But without going further into these general considerations, we come directly to the questions presented :—
Did the Chancellor err in his conclusions from the facts -assumed? or did he properly settle the rights of the parties under these clauses of the will ?
*387 First, was the fact of a subsequent assent of the testator en pais, but not by testamentary act, a waiver of the condition in the will, so as to prevent its operation on the devise or bequest?
In an early case, Clarke v. Berkeley, 2 Ver., 720, decided by Lord Cowper, the devise was upon trust to convey to the daughter, in case she married with the consent of two of the trustees and of her mother, but if she died before marriage, or married without such consent, to other uses.
The daughter married in the lifetime of the testator, and with his consent; but it was insisted that she could not take by the will, the devise being on a condition precedent, that she married with the consent of the trustees and of. her mother.
The Lord Chancellor decreed a conveyance according to the will, saying: “As to the condition in the will, that was dispensed with by having the testator’s own consent which was more to be regarded than any consent of trustees, to whom he had delegated the power to consent in case of marriage after his decease.”
The principle is recognized in the case of Pamde v. Lyon, 1 V. & B., 481-2, and in numerous other cases cited in Lead. C. in Eq„ vol. 2, p. 399. The result of the English authorities may be stated in the language of the Vice Chancellor in case the of Wheeler v. Warner,, 1 Sim. & Stuart, 158:— “That a marriage in the lifetime of the father with his consent or subsequent approbation, is equivalent to a marriage after his death with the consent of trustees.”
*388 The Chancellor, in the decree before us, assumes this subsequent approval of the father, and holds that it operated to dispense with the condition in the will. See also 14 Sim., 30.
The decree of the Chancellor must be sustained on another ground which we think is valid both upon reason and authority; — that the condition was intended by the testator to operate only upon such marriages as might take place after his death. The proviso being in a will, intended to operate- only after his death, and construed by the Code, sec. 2195, both as to real and personal estate, to speak and take effect as if it had been executed immediately before his death, before which time the party had already been married, it would be most unreasonable to hold that it should operate retrospectively. If the testator had intended or desired to cut his daughter off from his estate on account of this marriage in his lifetime, it would have been a simple thing for him to make a codicil to his will- to that, effect. This he did not do. We must therefore assume that he intended that the provision should operate as a restraint upon improvident marriages after his death, when he could no longer give his personal attention to this most important matter, but should- not operate upon a marriage already consummated in which he had acquiesced, and that therefore he left his will unaltered.
That this provision was intended and expected to be operative after the death of the testator, and not during his lifetime, is shown by the provision, that should any of the children marry in anyway eon- *389 trary to any part of this provision, then one thousand dollars is to be disbursed by the executor and executrix in the careful purchase of such things as such child may need in and towards housekeeping, etc. It is evident from this that the testator contemplated a forfeiture taking place when his executor and executrix should have charge of his estate, which could only be after his death.
We need not discuss the other grounds assumed by the Chancellor, as this is conclusive as to the result upon this branch of the case. It may, however, be proper to say that it would be difficult to sustain the view of Chancellor, especially as to the real estate, upon the ground simply that this provision was in terrorem; but on this branch of the question we express no positive opinion, as its solution depends perhaps in no small degree upon another question, viz: whether the estate given the children was vested at the death of the testator, and whether the condition was precedent or subsequent, — questions that will be perhaps more properly discussed in another case heard with this.
The result is, that the bill of review fails, and that the demurrer was, as to this part of the case, properly sustained.
We might, perhaps, without any impropriety pass over the other objection taken to the proceedings in the original case, as the decision of the questions herein settled disposes of the rights of the complainants sought to be enforced by this proceeding as against Mrs. Pettit, now Mrs. Severson. But as the *390 point is presented, and urged with some earnestness, we dispose of it. It is, that the infant defendants in the original suit did not answer or defend the original bill, or any bill, by themselves or by any regular guardian authorized to answer for them, or by any guardian ad litem, and that there is nothing in the decree to show that they did so answer or defend.
It appears from the proceedings that the infants were regularly served with process, and the answer of Mrs. Cooper purports to be for herself and as guardian of the minors, naming them, one of them having at this time married Orlando Brown, to-wit, the mother of the minor defendants in this ease. She and her husband answer for themselves.
Mrs. Cooper was appointed guardian of the children by the will of her husband.
In the case of Britain v. Ccwan, 5 Hum., 318, it was said by court, that, as the regular guardian represents the entire estate of the minor, and also his person, and the infant must appear and defend under him in this State, service on the guardian, even without service on the minor, is sufficient in an ordinary chancery proceeding, where no statute requires-the minor to be served. If this be correct, then certainly when the minor is served, and is before the court, the regular guardian can properly perform the duty imposed by law, of defending the estate of his ward.
In the case of Bank of Louisville v. Leftwick, April term,. 1872, (9 Heis., 471), this court held, that though the record did not show the appointment of the guardian who- *391 defended in the case, yet it appearing that he had appeared and answered as such, and was so recognized by the court, we would presume an appointment. This was the case of a guardian ad litem. Mrs. Cooper was appointed guardian 'by the will, as we have said, but was not required to give security as such. We can but presume that she had regularly entered upon her duties as such, nothing appearing to the contrary, and she acting in that character.
We need not discusss in this opinion the cases referred to by counsel. We will only say that we have examined them, and do not think they militate against our view of the question.
The bill contains some new matter properly the subject of an original bill, which matter in strictness could not properly be incorporated with a bill of review. As to this part of the bill, the complainants may retain it if they desire, and it may be remanded for further proceedings in the court below.
The decree of the Chancellor as to the matter of the bill of review, dismissing the same, will be affirmed, with the costs of this court and of the court below.